UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KHARON KINCANNON,

       Plaintiff,

v.

DETROIT PUBLIC SCHOOLS, ET AL,

       Defendants.

_____/

Case No. 11-13780

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [29]
FILED BY ALL DEFENDANTS EXCEPT DEFENDANT ALEYAH DAVIS**

This matter comes before the Court on a motion for summary judgment filed by all Defendants except Defendant Aleyah Davis, Plaintiff's former summer school classmate and alleged assailant. Plaintiff's civil rights action, brought pursuant to 42 U.S.C. § 1983, alleges a Fourteenth Amendment substantive due process claim against Defendants Detroit Public Schools, Maxie, Iduma, Jones, McEwen, and Snow (Count IV) and a claim of municipal liability against Defendant Detroit Public Schools (Count V). The claims against Defendant Aleyah Davis have been remanded.[1] Plaintiff's claims arise from an alleged assault on him on July 16, 2009 by his classmate, Defendant Aleyah Davis, in a Detroit Public School high school classroom where both were taught English by special education teacher, Defendant Lorna Maxie, during summer school in the Noon to 2:00 p.m.

_____

[1]After Defendants timely removed Plaintiff's action here, this Court remanded Plaintiff's state-law claims. [Doc. No. 5, 10/05/11 Order.] These two federal claims are all that remain at issue before this Court.

time slot.  Both Plaintiff and Co-Defendant Davis were special education students at the time of the alleged assault.

Defendants' motion for summary judgment is GRANTED.  First, as to Defendants Iduma, Jones, McEwen, and Snow, Plaintiff presents no evidence that these Defendants were involved in any capacity in the July 16, 2009 incident and thus cannot state a substantive due process claim against them.  Second, as to Defendants Maxie and the Detroit Public Schools, Plaintiff fails to show that a genuine issue of material fact exists for trial on his substantive due process and municipal liability claims.

## I.   Background

On July 16, 2009, Plaintiff, a 16-year old special education student with learning disabilities, cerebral palsy, a slight speech impediment, and a seizure disorder, was attending summer school at Henry Ford High School.  Although he had just completed the 9th grade, Plaintiff functioned at an 8th grade level.  Defendant Maxie, a certified special education teacher, had been Plaintiff's 9th grade teacher and was his English teacher during summer school at Henry Ford in July 2009.  She testified that Plaintiff needed constant redirection and often directed unsolicited comments to other students in a loud voice.  As she put it, whatever Plaintiff wanted to say to another student, he would just say it, loudly.  (Pl.'s Resp., Ex. B, L. Maxie Dep. at 8-11, 13-20; Ex. C, Pl.'s medical records at 7 of 218.)

The English summer school class that Defendant Maxie taught at Henry Ford High from Noon to 2:00 p.m. had about 25 students, with 4 or 5 being special education students.  (L. Maxie Dep. at 32.)  Defendant Aleyah Davis, an emotionally impaired, 11th grade, female, special education student joined the English class about one week before

2

the July 16, 2009 incident.  Defendant Maxie had not taught her before and believed she was new to the school district.  Before the July 16, 2009 incident, Defendant Maxie knew Davis was emotionally impaired but had not had any problems with her and was not aware of any problem between Davis and Plaintiff.  (L. Maxie Dep. at 21-22, 24, 27-28, 34, 56.) Defendant Maxie, the teacher, had her desk in the front of the classroom, with five or six rows of student desks facing her.  Defendant Davis was seated in the first desk in the row immediately in front of teacher Maxie's desk.  Plaintiff was seated in the first desk two rows over and close to the classroom door.  Plaintiff usually had a male aide who assisted him with academics and sat next to him in the classroom, but the aide was absent on July 16, 2009. (L. Maxie Dep. at 28-31.)

Plaintiff's and Defendant Maxie's versions of what happened on July 16, 2009 differ, and Plaintiff's version is set forth here.  Plaintiff testified that, before July 16th, he never had a problem with Defendant Davis.  In fact, just one week earlier, they had friendly words during a field trip.  (Pl.'s Resp., Ex. A,  Pl.'s Dep. at 10-11, 47-48.)  But, on July 16th, that changed.  Plaintiff and about ten other students were in Defendant Maxie's classroom at Henry Ford High School, and Defendant Maxie was at her desk talking to the whole class. (Pl.'s Dep. at 15, 66.)  While Plaintiff and Davis were seated at their desks, Plaintiff testified that Davis kept bothering him by saying stuff to him that upset him.  He cannot remember what she said, but recalls that she did not threaten him or throw anything at him, and he was not afraid of her.  (Pl.'s Dep. at 12-16, 18, 20.)  Davis was talking loud enough that teacher Maxie looked at Plaintiff, who told Maxie that Davis kept saying something to him. Teacher Maxie told Davis to leave Plaintiff alone about three or four times, but Davis did not do so.  After Plaintiff called Davis a bitch, she got up and slapped the back of his head

3

near the top, with her open palm, knocking Plaintiff's glasses to the floor. Plaintiff testified that this did not cause him any pain, and he was not knocked out of his seat. Davis returned to her seat, and Plaintiff went to teacher Maxie's desk and told Maxie that Davis hit him, that Plaintiff had called Davis a name, and that Davis kept "picking with him." Teacher Maxie told Plaintiff to sit back down, and he thought teacher Maxie told Davis she would have to leave. Plaintiff went back and sat in his seat, and teacher Maxie stepped outside of the classroom.

After Plaintiff went back to his seat, Davis kept bothering him. About three minutes after the first incident, Davis got up again and slapped Plaintiff on the same spot on the back of his head and then returned to her seat. Just like the first slap, the second slap did not cause him any pain. At that time, teacher Maxie was outside the classroom door, talking to someone in the hall while looking back into the room at Plaintiff. Plaintiff thinks teacher Maxie saw Davis hit him on the head the second time. Teacher Maxie returned to the classroom and her desk, and Plaintiff got up, went to her desk, and told her that he was going to go and get security. Teacher Maxie told him to go and get an incident report. When Plaintiff got to the classroom door, Davis was already blocking the doorway. Plaintiff told Davis, "Excuse me, may I leave out the class so I can go get security?" Davis did not move, and Plaintiff pushed Davis and was able to get out of the doorway. Davis then pushed Plaintiff's chest and he fell to the floor on his right side. He landed with his feet and part of his body in the hall and his head and the other half of his body in the classroom. Davis started hitting and kicking Plaintiff in the head. He tried to get back up, but did not fight back. Davis punched him in the head twice and kicked him about three or four times in the head. Plaintiff called out to teacher Maxie saying, "Miss Maxie, I need help, I'm

4

getting assaulted." Plaintiff testified that Teacher Maxie came right away. Maxie and an individual Plaintiff believed was the principal pulled Davis off him. Then, he got up and walked without assistance to the security office which was located directly across the hall from his classroom. He was not bleeding. Plaintiff testified that he wrote out an incident report at the school but has not produced it as an exhibit. (Pl.'s Dep. at 11-12, 17-46, 54-56.) Plaintiff has produced a police report, prepared by the Detroit Police Department on July 16, 2009, that reports the assault on Plaintiff by Davis that day at Henry Ford High School. (Pl.'s Resp., Ex. D, 9/16/09 Police Report.)

Plaintiff did not go to the hospital on July 16, 2009. He did go to Children's Hospital four days later on July 20, 2009, after he suffered a seizure while at home. He was discharged on July 22, 2009, and the discharge diagnosis lists seizures, closed head injury, and hydrocephalus with ventriculoperitoneal shunt resolved. (Pl.'s Resp., Ex. C, medical records at 6-7, 10-11 of 218.)

Plaintiff filed his lawsuit on July 13, 2011 in Wayne County Circuit Court. It was subsequently removed to this Court, and all state-law claims were remanded. This matter comes before the Court on a motion for summary judgment filed by all Defendants except Defendant Aleyah Davis, Plaintiff's former summer school classmate and alleged assailant.

## II.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the

nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Revised

Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to

properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may

consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Ultimately a district court must determine whether the record as a whole presents a

genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most

6

favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

## III. Analysis

The lead Sixth Circuit decision addressing substantive due process rights in the context of classmate-on-classmate violence is *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460 (6th Cir. 2006). Despite the tragic facts in *McQueen*, where a first-grader brought a gun to his elementary school and shot and killed his first-grade classmate when the teacher was out of the classroom, the Sixth Circuit determined that the deceased first-grader's substantive due process rights were not violated by her teacher. *Id.* at 471. The *McQueen* court further held that, "[w]ithout an underlying constitution violation," the plaintiff could not maintain her municipal liability claim against the defendant school district. *Id.* The same analysis and result in *McQueen* apply here.

### A. Substantive Due Process Claims Against Defendants Iduma, Jones, McEwen, and Snow

It is undisputed that Defendants Iduma, Jones, McEwen, and Snow were not working at Henry Ford High School at the time of the July 16, 2009 incident and thus there is no genuine issue of material fact whether they violated Plaintiff's substantive due process rights -- they did not. (Defs.' Mot., Ex. 4, Jones Dep. at 6; Ex. 5, Snow Dep. at 7; Ex. 6, McEwen Aff.) Plaintiff testified that he does know these individuals and only teacher Maxie and an unidentified principal were present at the time of Davis's assault on July 16, 2009. (Pl.'s Dep. at 44-47, 67-68.) Accordingly, Plaintiff's claims against Defendants Iduma, Jones, McEwen, and Snow are dismissed with prejudice.

7

### B.  Substantive Due Process Claims Against Defendant Maxie

Invoking the state-created-danger doctrine, Plaintiff claims that Defendant Maxie violated his substantive due process rights by failing to take the affirmative acts of intervening and stopping classmate Davis from bothering him before Davis pushed him to the ground and assaulted him and thus created or increased the danger that Plaintiff would be assaulted by Davis.  (Pl.'s Resp. at 4, 8, 11.)  The *McQueen* court discussed the state-created-danger doctrine at length.  That discussion is summarized below.

In *DeShaney v. Winnegago County Department of Social Services*, 489 U.S. 189 (1989), the Supreme Court held that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  *Id.* at 191.  The Court did acknowledge, however, that "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to individuals. . . ."  *Id.* at 198.  The Sixth Circuit, and the other Circuit Courts of Appeal, have recognized two limited circumstances where the State can be held liable for failing to protect an individual against private violence.  Plaintiff does not argue that the first -- the existence of a "special relationship" -- applies here.[2]  Rather, he argues that the second -- the state-created-danger doctrine -- applies.

As the *McQueen* court observed, "the state-created-danger theory of due process liability" has "three important requirements:  an affirmative act that creates or increases the

---

[2]Plaintiff does not argue that a "special relationship" existed between him as a student and his school.  As observed in *McQueen*, the Sixth Circuit has consistently held that "there is no 'special relationship' between a school and its students that gives rise to a constitutional duty."  433 F.3d at 464, n.4 (citing cases).

8

risk, a special danger to the victim as distinguished from the public at large, and the requisite degree of culpability." *McQueen*, 433 F.3d at 464. Just like the plaintiff in *McQueen*, Plaintiff here "has failed to show sufficient evidence to raise a genuine issue of material fact with respect to two of the three requirements under the state-created-danger theory," and thus has no viable substantive due process claim against Defendant Maxie. *Id.* at 471.

As to the first requirement, Plaintiff presents no evidence that Defendant Maxie's affirmative acts created or increased the risk that Plaintiff would be exposed to Davis's private acts of violence. Rather, Plaintiff complains that Defendant Maxie failed to take affirmative acts, i.e., did not interfere and stop Davis before she pushed Plaintiff to the ground and assaulted him. Accordingly, Plaintiff cannot establish the first requirement under the state-created-danger doctrine.

As to the second requirement, "'plaintiffs alleging a constitutional tort under § 1983 [must] show [a] 'special danger.'" *Id.* at 467 (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)). That "special danger exists where the state's actions place the victim specifically at risk, as distinguished from a risk that affects the public at large." *Id.* at 468 (internal quotation marks and citation omitted). The *McQueen* court reasoned that leaving five children alone in a classroom with an armed classmate was similar to the facts in *Kallstrom,* where a few police officers and family members were at risk, because the armed classmate "was much more likely to shoot the students in his immediate physical presence than a member of the general public." *Id.* It explained, "[w]hile we do not discount the risks [the first-grade shooter] posed to those outside his

9

school (i.e., the general public), those risks were smaller than and collateral to the risks faced by the five children present in the classroom with him." *Id.* The court thus held that the plaintiff had "shown sufficient evidence to raise a genuine issue of material fact as to the existence of a special danger." *Id.* at 469. The same reasoning and result apply here. While it is true that Davis posed risks to those outside the classroom (i.e., the general public), "those risks were smaller than and collateral to the risks faced" by the approximately 10 children, including Plaintiff, who were present in the classroom with her. *Id.* at 468.

The third requirement of the state-created-danger doctrine has been characterized "as a requirement that the state must have known or clearly should have known that its actions specifically endangered an individual." *Id.* at 469 (internal quotation marks and citation omitted). The Sixth Circuit subsequently "clarified that the plaintiff must demonstrate that the state acted with the requisite culpability to establish a substantive due process violation under the Fourteenth Amendment." *Id.* (internal quotation marks and citation omitted). As the *McQueen* court explained:

> The government's conduct must be so egregious that it can be said to be arbitrary in the constitutional sense, but the standard is no calibrated yard stick. The guiding principle seems to be that a deliberate indifference standard is appropriate in settings [that] provide the opportunity for reflection and unhurried judgments, but that a higher bar may be necessary when opportunities for reasoned deliberation are not present.

*Id.* (internal quotation marks and citations omitted).

Here, as in *McQueen*, the facts lend themselves to a deliberate indifference standard. The Sixth Circuit has "equated deliberate indifference with subjective recklessness, which

10

means that the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (internal quotation marks and citations omitted). In *McQueen*, the plaintiff argued that, "based on [the classmate with the gun]'s history of behavior problems, [the teacher] knew that [the classmate] might violently assault another student and acted recklessly in conscious disregard of that risk by leaving [the classmate with the gun] and several other children unsupervised in the classroom." *Id.* The Sixth Circuit affirmed the district court's rejection of that argument:

> [The plaintiff] has not alleged that [the teacher] knew or even suspected that [the classmate] had a gun, knife, or other similarly dangerous weapon with him on the day of the shooting, nor did [the classmate]'s history of behavioral problems suggest that he would escalate from hitting with fists, feet, and pencils to such weapons. Absent such evidence, [the plaintiff] cannot show that the risk [of such a violent attack by the classmate] was so obvious that [the teacher] had to have known about it.

*Id.* (internal quotation marks and citation omitted). The same is true here.

Plaintiff has not alleged or presented any evidence that, before the July 16, 2009 incident, Defendant Maxie knew or even suspected that Davis would physically attack another classmate. In fact, it is undisputed that Davis had not shown any aggressive behavior at all prior to this incident and Defendant Maxie had no information that would lead her to suspect that Davis would physically assault another classmate. Both Plaintiff and Defendant Maxie testified that, before July 16, 2009, there was never any problem between Davis and Plaintiff, and Plaintiff even testified that they had just had a pleasant exchange at a field trip the week before this incident took place. Accordingly, because Plaintiff has

11

not produced any evidence showing that Defendant Maxie acted with deliberate indifference, he cannot establish that she violated his substantive due process rights.

Plaintiff's substantive due process claims against Defendant Maxie are dismissed with prejudice. The Court now considers Plaintiff's claims against Defendant Detroit Public Schools.

### C. Claims Against Defendant Detroit Public Schools

Plaintiff also argues that Defendant Detroit Public Schools violated his substantive due process rights when it created or increased a risk that he would be physically assaulted by another classmate by combining regular and special education students in a summer school class, by allowing a teacher certified in special education to teach a class combining regular and special education students, and by failing to provide Defendant Maxie with background information about Davis that may have disclosed behavior problems or violent tendencies. Plaintiff also alleges that Defendant Detroit Public Schools violated his substantive due process rights by failing to adequately investigate the July 16, 2009 incident that gives rise to his substantive due process claim.

This Defendant is a governmental agency or municipality that "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). As the *McQueen* court observed, "'[w]here . . . a municipality's liability is alleged on the basis of the unconstitutional actions of its employees, it is necessary to show that the employees inflicted a constitutional harm.'" *McQueen*, 433 F.3d at 471 (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 516 (6th Cir. 2002)).

12

Plaintiff premises his claims against Defendant Detroit Public Schools on the basis that Defendant Maxie's conduct on July 16, 2009 violated his substantive due process rights -- a claim this Court has determined Plaintiff cannot establish.  Accordingly, because Defendant Detroit Public Schools "can only be held liable if there is a showing of liability" as to one of its employees, this Court's conclusion that Defendant Maxie did not violate Plaintiff's substantive due process rights also resolves the claims against Defendant Detroit Public Schools in Defendant's favor.[3]  *See id.* (quoting *Bukowski v. City of Akron*, 326 F.3d 702, 712-13 (6th Cir. 2003)).

Plaintiff's substantive due process and municipal liability claims against Defendants Maxie and Detroit Public Schools are thus dismissed with prejudice.

## IV.  Conclusion

For the above-state reasons, the motion for summary judgment filed by Defendants Detroit Public Schools, Maxie, Iduma, Jones McEwen, and Snow is GRANTED, and Plaintiff's case is DISMISSED WITH PREJUDICE.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  October 12, 2012

---

[3]Even if this were not so, Plaintiff presents no evidence establishing that Defendant Detroit Public Schools took an affirmative act that created or increased the risk that Plaintiff, a special education student, would be exposed to private acts of violence by another special education student simply by combining regular and special education students in a summer school class taught by a teacher certified to teach special education students.

13

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 12, 2012, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager